

| | |
|---|---|
| **Mark M. Makhail**<br>Partner<br><br>T. 973-639-2092<br>F. 973-206-3794<br><br>mmakhail@mccarter.com | McCarter & English, LLP<br><br>Four Gateway Center<br>100 Mulberry Street<br>Newark, NJ 07102-4056<br><br>www.mccarter.com |

October 11, 2024

**VIA ECF**

Hon. José R. Almonte, U.S.M.J.
United States District Court
District of New Jersey
50 Walnut Street
Newark, New Jersey 07102

Re:   Palomino Master Ltd. et al. v. Credit Suisse Group AG et al.,
      Civil Action No. 2:24-5539

Dear Judge Almonte:

We represent Defendants in the above-referenced action and write to respond to the September 26, 2024 letter filed by Plaintiffs (ECF No. 14; "Plaintiffs' Letter" or "Pl. Ltr.") concerning Judge McMahon's recent decision in *Diabat* v. *Credit Suisse Group AG*, No. 23-cv-05874-CM (S.D.N.Y.) (hereinafter "*Diabat*"). Plaintiffs are right that the Judge McMahon's decision in that case (*Diabat*, ECF No. 109; the "*Diabat* Opinion" or "*Diabat* Op.") is relevant to Defendants' pending motion to transfer this action, but their conclusions are exactly wrong—the *Diabat* Opinion **strengthens** the case for transfer.

**A.    Judge McMahon's Extensive Experience With the Facts and Events Implicated by This Case Remains a Strong Ground for Transfer**

The *Diabat* Opinion underscores that Judge McMahon is far up the learning curve as to the key issues in this case. That ruling, which runs to 303 pages and reflects, in Judge McMahon's own words, a "painstaking analysis" of the *Diabat* complaint (*Diabat* Op. at 244), is the fourth opinion Judge McMahon has issued in cases emerging from the announcement of the merger between Credit Suisse Group AG ("Credit Suisse") and UBS Group AG ("UBS"), and the third in cases implicating the Credit Suisse AT1 bonds at issue in this case. To say that she has invested considerable time in understanding these events and issues would be an understatement. *See Patton Boggs LLP* v. *Chevron Corp.*, 2012 WL 6568461, at *8 (D.N.J. July 18, 2012) (transfer warranted where transferee court "has already expended significant effort in familiarizing itself with this case's highly complex factual background and applying the relevant law to it"), *report and recommendation adopted*, 2012 WL 6568526 (D.N.J. Dec. 14, 2012). That Plaintiffs here focus on a few weeks of the broader time period relevant to *Diabat* and the other cases before Judge McMahon does not change this fundamental fact. "If the Court were to deny [Defendants'] Motion to Transfer, [it] would be required to duplicate that effort, thus guaranteeing a less expeditious resolution of this . . . matter. Moreover, it would be

a gross waste of judicial resources for this Court to litigate the merits of Plaintiff's claims from scratch[.]" *Id.*

**B.     The Issues in *Diabat* and This Case Continue to Overlap**

The *Diabat* Opinion also reinforces Defendants' argument that "alleged misstatements in both cases address the same set of facts, namely, the liquidity and financial health of Credit Suisse" in the run-up to the announcement of its merger with UBS in March 2023.  ECF No. 13 at 7.  Judge McMahon's ruling narrows *Diabat* to focus on events between October 2022 and March 2023, *i.e.*, the few months immediately preceding the announcement of Credit Suisse's merger with UBS.  In other words, this case and *Diabat* continue to overlap extensively.  *Compare, e.g.*, Pl. Ltr. at 1 (observing that the allegations in this case include allegations that "between March 14 and March 19, 2023, Defendants misrepresented Credit Suisse's liquidity position") *with Diabat* Op. at 226-27 (declining to dismiss allegations concerning Credit Suisse's Annual Report issued on March 14, 2022, including because the allegations in *Diabat* suggest that Credit Suisse should have disclosed that it had a "serious potential liquidity problem" and that Credit Suisse's "statements about its liquidity gave comfort to investors that it was managing its liquidity issues").

Plaintiffs' argument that *Diabat* does "not involve the securities at issue in this case—the AT1 Notes that were written off as part of Credit Suisse's merger with UBS" is both incorrect and irrelevant.  Pl. Ltr. at 2; *see also id.* at 3.  The operative complaint in *Diabat* was filed on behalf of "all persons . . . who purchased or otherwise acquired Credit Suisse securities in domestic transactions during the Class Period [*i.e.*, between April 6, 2021 through and including March 20, 2023]."  *Diabat*, ECF No. 65 ¶¶ 2, 464.  Judge McMahon has explicitly ruled that Prof. Diabat is Lead Plaintiff on behalf of purchasers of **all** Credit Suisse securities during the relevant time period (including AT1 bonds), not just CS ADSs.  *See Diabat*, ECF No. 58 at 9-17.  And the *Diabat* Opinion never says that claims on behalf of AT1 bondholders have been dismissed.

In any event, even if claims on behalf of AT1 bondholders are or become dismissed from *Diabat*, the facts and law at issue in each case continue to overlap, as discussed above.  As such, the *Diabat* Opinion does not eliminate or even reduce the risk of inconsistent outcomes and judicial inefficiency if that case and this one proceed in different courts.  *See generally Hytera Commc'ns Corp.* v. *Motorola Sols., Inc.*, 2018 WL 7108018, at *10 (D.N.J. Dec. 6, 2018) ("[T]he existence of a similar case supports transfer where the cases are similar enough that transfer would support judicial efficiency or reduce the risk of inconsistent results."); ECF No. 11-1 at 7; ECF No. 13 at 7.  Transfer to the Southern District of New York would substantially reduce both risks.  For example, both Prof. Diabat and Plaintiffs here will no doubt seek discovery relating to the months leading up to the announcement of Credit Suisse's merger with UBS, at least dating back to October 2022—indeed, Plaintiffs' Complaint expressly implicates that time period.  *See* ECF No. 13 at 8.

October 11, 2024
Page 3

And even if discovery could be coordinated to some degree, such coordination would not eliminate other inefficiencies, such as duplicative or inconsistent motion practice, disputes concerning whether documents produced in one action are relevant to the other, and the like. *See id.* at 7-8.

C.   **Plaintiffs' Letter Ignores the Related *Core Capital* Case, Which Is Also Pending Before Judge McMahon and Overlaps With This Case**

In any event, *Diabat* is not the only Credit Suisse AT1 bonds litigation pending before Judge McMahon. Plaintiffs' Letter conspicuously avoids mentioning *Core Capital Partners, Ltd. v. Credit Suisse Group AG*, No. 23-cv-09287-CM (S.D.N.Y.) (hereinafter "*Core Capital*"), which also remains pending. That case, like this one, was brought by purchasers of Credit Suisse AT1 bonds. *Compare* Pl. Ltr. at 2 (the "securities at issue in this case" are "AT1 Notes") *with Core Capital*, ECF No. 1 ¶ 1 (asserting claims on behalf of a putative class of purchasers of "Credit Suisse additional tier-one bonds ('AT1 Bonds') in a domestic transaction in the U.S. between February 18, 2021 and March 20, 2023"); *see also* ECF No. 11-1 at 3-4.

Judge McMahon recently set a briefing schedule for motions to dismiss the *Core Capital* complaint, observing, *inter alia*, that "[b]ecause the proximate cause of the losses on the AT1 bonds was FINMA's (the Swiss regulator's) directive to write them down to zero," the defendants in that case "will likely have a different and perhaps more compelling argument on loss causation than was the case in *Diabat*." *Core Capital*, ECF No. 19 at 2.[1] Such arguments, of course, would be equally applicable to this case as well. *See, e.g.*, ECF No. 1 ¶¶ 21-22; 140-43 (the Complaint in this case also implicates FINMA's write-down directive). It would be inefficient and would pose a risk of inconsistent outcomes if Defendants in this action (all of whom are also defendants in *Core Capital*) were required to make arguments (and, potentially, engage in discovery) concerning FINMA's write-down directive in both cases. The overlap of this case with *Core Capital* thus further underscores that transfer to the Southern District of New York is appropriate.

D.   **The Fact That Plaintiffs Here May Advance Different Legal Arguments Than in *Diabat* Is Not Grounds to Deny Transfer**

Finally, the fact that Plaintiffs in this case may have different arguments in opposition to a motion to dismiss than the plaintiff in *Diabat* had says nothing about

---

[1] Judge McMahon made similar comments in *Diabat* itself. *See Diabat*, ECF No. 58 at 13-14 (referring to FINMA's write-down directive as a "superseding event" that "gives rise to the very real prospect that the bonds were effectively worthless at the end of the class period, making it impossible for the AT1 bondholders to recover much of anything"). Again, having considered the issues extensively, Judge McMahon is best situated to determine whether Plaintiffs' loss-causation allegations in this case "based on the write-down of the AT1 Notes" (Pl. Ltr. at 2) are sufficient.

whether transfer is appropriate. Plaintiffs argue in their Letter that they allege "a motive-and-opportunity theory of scienter that Judge McMahon found might pass muster but had not been alleged by the *Diabat* plaintiffs" and that they allege "theories of loss causation based on the write-down of the AT1 Notes that are not alleged by the *Diabat* plaintiffs." Pl. Ltr. at 2. Plaintiffs remain free to raise those arguments at the motion to dismiss stage, but the existence of those arguments says nothing about the merits of Defendants' transfer motion. The fact remains that Judge McMahon is best situated to determine whether and to what extent Plaintiffs' scienter and loss-causation theories do in fact diverge from those alleged in *Diabat*, and whether any such divergence makes a material difference for the viability of their claims.

\* \* \*

In sum, the "potential for inconsistent outcomes, judicial inefficiency, or duplication of effort" continues to exist if this case is allowed to proceed in this Court. Pl. Ltr. at 1. Judge McMahon's *Diabat* Opinion does nothing to reduce or eliminate those risks. On the contrary, the Opinion only strengthens Defendants' arguments for transfer. For the reasons discussed herein and for the other reasons set forth in Defendants' briefing, Defendants' motion to transfer this case to the Southern District of New York should be granted.

Respectfully submitted,

/s/ *Mark M. Makhail*
Mark M. Makhail


CC: All Counsel of Record (via ECF)