## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| PALOMINO MASTER LTD. *et al.*, | Civil Action No. |
| Plaintiffs, | 24-cv-05539 (JXN) (JRA) |
| v. | |
| CREDIT SUISSE GROUP AG, *et al.*, | **OPINION AND ORDER** |
| Defendants. | |

**José R. Almonte, U.S.M.J.**

Defendants Credit Suisse Group AG, Axel P. Lehmann, and Ulrich Körner (collectively "Credit Suisse") move to transfer this matter to the United States District Court for the Southern District of New York ("SDNY") pursuant to 28 U.S.C. § 1404(a) (the "Motion"). ECF No. 11. Plaintiffs Palomino Master Ltd. ("Palomino"), Azteca Partners LLC ("Azteca"), and Appaloosa LP ("Appaloosa") (collectively "Plaintiffs") oppose the Motion. *See* ECF Nos. 12, 14, 17. The Court has fully reviewed the parties' arguments in their motion papers and decides the Motion without oral argument. *See* Fed. R. Civ. P. 78(b); L.Civ.R. 78.1(b). Because the instant case might have been brought in SDNY and because that district would be a more efficient forum for this litigation, Credit Suisse's motion to transfer is **GRANTED**.

## I.    BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs initiated this action to recover investment losses allegedly due to Defendants' misrepresentations about a bank's financial health during a one-week

span in March 2023, during which the bank suffered serious liquidity issues.  Compl. ¶ 1, ECF No. 1.  Starting on March 10, 2023, the collapse of Silicon Valley Bank ("SVB") triggered widespread financial market panic and sparked concern about the stability of Credit Suisse, a well-known Swiss banking institution that previously suffered financial instability in October 2022.  *Id.* ¶¶ 2-4.  Financial institutions feared a "bank run," meaning that numerous customers would withdraw their deposits simultaneously fearing that the institutions would become insolvent.  *See id.* ¶¶ 5-7.  To address these concerns and stave off a potential bank run that caused the collapse of SVB, Credit Suisse executives made public statements asserting that the bank was financially sound.  *Id.* ¶¶ 4-6.  Those executives included Chief Executive Officer Ulrich Körner ("Körner") and Chairman Axel Lehmann ("Lehmann").  *Id.*

On March 14, 2023, Defendant Körner appeared on Bloomberg Television and claimed the bank had experienced material inflows the previous day and had a "strong" liquidity coverage ratio.  *Id.* ¶¶ 8, 10.  The following day, Defendant Lehmann echoed this narrative and stated in an interview on Bloomberg at the Financial Sector Conference in Saudi Arabia that Credit Suisse had "de-risked" its balance sheet, and he dismissed the possibility of government assistance.  *Id.* ¶¶ 11-12.  These statements allegedly led the public to believe that Credit Suisse would not experience a bank run and that it was in a position superior to that of SVB.  Compl. ¶¶ 12-15.

However, Plaintiffs allege that, in reality, the strength of Credit Suisse's liquidity was tenuous and similar to SVB's.  *Id.* ¶ 16.  On March 16, 2023, Credit

Suisse accepted an emergency backstop from the Swiss government and disclosed that it intended to borrow up to fifty billion Swiss francs from the Swiss National Bank. *Id.* ¶¶ 17-18. Three days later, on March 19, 2023, the Swiss Financial Market Supervisory Authority ("FINMA") announced the merger of Credit Suisse and UBS Group AG ("UBS"), a Swiss multinational investment bank and financial services company, causing Credit Suisse to cease to exist. *Id.* ¶ 19.

During this turbulent time, between March 14 and March 19, 2023, Plaintiff Appaloosa, acting as the investment advisor for the private investment funds of Plaintiffs Azteca and Palomino, purchased Credit Suisse Additional Tier-1 ("AT1") Notes, amassing "a substantial position" not specified in the Complaint. *Id.* ¶¶ 24, 32, 99-100. Appaloosa's traders allegedly placed the orders to purchase Credit Suisse's AT1 Notes at its main office location in New Jersey through their broker, Goldman Sachs. Compl. ¶¶ 32, 103-05. Credit Suisse's AT1 Notes had a write-down feature in which the full principal amount of the AT1 Notes could be permanently written down to zero, and the notes canceled, upon the occurrence of certain triggering events. *Id.* ¶ 47.

Plaintiffs allege that they specifically relied on Credit Suisse's public assurances, broadcasted on global news outlets, about the bank's financial health in purchasing Credit Suisse AT1 Notes the week of March 14, 2023. *See id.* ¶¶ 207-13. Yet contrary to those alleged reassurances, Plaintiffs allege that after FINMA facilitated the merger with UBS, FINMA subsequently ordered Credit Suisse's AT1

Notes to be written down to zero. *Id.* ¶¶ 137-43. As a result, by March 20, 2023, Plaintiffs' AT1 Notes had zero market value. *Id.* ¶ 226.

Plaintiffs allege that shortly after the write-down of its AT1 Notes, Credit Suisse changed its story and admitted it had been in a weak liquidity position heading into March 2023, in sharp contrast to its prior statements. *Id.* ¶¶ 144-54. Plaintiffs allege that they suffered significant economic losses as a result of their reliance on Credit Suisse's misrepresentations and that they are entitled to the full value paid for the AT1 Notes. *Id.* ¶¶ 207-29.

Plaintiffs filed their complaint against Credit Suisse on April 23, 2024, alleging both federal securities claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("the Exchange Act"), as amended, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b–5, promulgated thereunder, 17 C.F.R. § 240.10b–5, and claims under the New Jersey Racketeer Influenced and Corrupt Organizations Act ("NJ RICO"), N.J. Stat. Ann. §§ 2C:41-1–6.2. Compl. ¶¶ 257-300. Credit Suisse filed this Motion on June 20, 2024, in lieu of an answer. ECF No. 11. The Motion is fully briefed. (ECF No. 11-1 ("Mov. Br."); ECF No. 12 ("Opp. Br."); ECF No. 13 ("Reply Br.")).[1]

## II.    LEGAL STANDARD

Section 1404(a) permits a district court "[f]or the convenience of parties and witnesses, in the interest of justice" to transfer an action to another district "where it

---

[1] The parties filed supplemental letters based upon a decision in a similar matter pending in SDNY, *Diabat v. Credit Suisse Group AG*, No. 23-cv-06023, 2024 WL 4252502 (S.D.N.Y. Sept. 19, 2024). ECF Nos. 14, 16-17. The Court has considered these additional arguments in its decision.

might have been brought." 28 U.S.C. § 1404(a). Importantly, the purpose of § 1404(a) is to "prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Kremer v. Lysich*, No. 3:18-cv-03676, 2019 WL 3423434, at *3 (D.N.J. July 30, 2019) (internal quotation marks omitted) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)). "The moving party bears the burden of establishing that the transfer is appropriate and must establish that the alternate forum is more convenient than the present forum." *Santi v. Nat'l Bus. Recs. Mgmt., LLC*, 722 F. Supp. 2d 602, 606 (D.N.J. 2010) (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995)). Accordingly, in a § 1404(a) motion to transfer venue, a court must determine: (i) whether the proposed forum is one in which plaintiff could have originally brought suit, and (ii) whether transfer would be in the interest of justice and for the convenience of parties and witnesses. *Id.*

Once the court determines that jurisdiction and venue is proper in the transferee district, the court must balance private and public interest factors identified by the Third Circuit Court of Appeals in *Jumara. See Jumara*, 55 F.3d at 879. The first category of factors considers the private interests of the litigants and includes:

> (1) "plaintiff's forum preference;" (2) "defendant's preference;" (3) "whether the claim arose elsewhere;" (4) "the convenience to the parties as indicated by their relative physical and financial condition;" (5) "the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora;" and (6) "the location of books and records

> (similarly limited to the extent that the files could not be produced in the alternative forum)."

*Id.* (internal citations omitted).

The second category of factors considers the public's interests and includes:

> (1) "the enforceability of the judgment;" (2) "practical considerations that could make the trial easy, expeditious or inexpensive;" (3) "the relative administrative difficulty in the two for a resulting from court congestion;" (4) "the local interest in deciding local controversies at home;" (5) "the public policies of the fora;" and (6) "the familiarity of the trial judge with applicable state law in diversity cases."

*Id.* at 879-80 (internal citations omitted). The list of factors in both the private and public interest categories is comprehensive but not exhaustive. *Id.* A Section 1404(a) analysis must always remain flexible and depend on the unique facts of the case. *See Lawrence v. Xerox Corp.*, 56 F. Supp. 2d 442, 450 (D.N.J. 1999) (collecting cases). While the moving party bears the burden to justify a transfer, it is "not required to show truly compelling circumstances for . . . change . . . [of venue, but rather that] all relevant things considered, the case would be better off transferred to another district[.]" *Dawson v. Gen. Motors LLC*, No. 19-8680, 2020 WL 953713, at *2 (D.N.J. Feb. 24, 2020) (internal citations and quotation marks omitted) (alterations in original).

## III.   DISCUSSION

Credit Suisse argues that this matter should be transferred to SDNY in the interest of efficiency and judicial economy because multiple other similar securities fraud cases were brought by investors in that venue related to losses suffered due to

the 2023 merger of Credit Suisse with UBS.[2]  Mov. Br. at 1.  In particular, Credit Suisse notes that all of these related Credit Suisse cases are being overseen by a single judge in SDNY, the Honorable Colleen McMahon, U.S.D.J.  *Id.*  Credit Suisse contends that the matter could have been brought in SDNY because Credit Suisse has transacted significant business there.  *Id.* at 5.  Further, Credit Suisse argues both the public and private interest factors weigh strongly in favor of transfer.  *See id.* at 6-12.

Plaintiffs argue in opposition that transfer is unwarranted.  *See generally* Opp. Br.  In support of that assertion, Plaintiffs contend the facts and legal arguments of the instant matter are dissimilar to all other Credit Suisse cases pending before SDNY.  *Id.* at 8.  Plaintiffs additionally argue Credit Suisse cannot establish that the matter could have been brought in SDNY as it has not submitted any proof that it has offices or employees in New York.  *Id.* at 10-11.  Plaintiffs also contend that a transfer of venue to SDNY is inappropriate due to Plaintiffs' NJ RICO claims.  *Id.* at 13-14.  Finally, Plaintiffs assert that the private and public interest factors weigh strongly against transfer.  *Id.* at 2-4, 15-24.  Having considered the parties'

---

[2] As raised by Credit Suisse, there are already many other Credit Suisse securities fraud cases that have been litigated, or that are currently being litigated, in SDNY.  *See Stevenson v. Thornburgh*, No. 23 Civ. 4458, 2024 WL 645187 (S.D.N.Y. Feb. 14, 2024); *Star Colbert v. Dougan*, 724 F. Supp. 3d 304 (S.D.N.Y. 2024), *appeal withdrawn sub nom.*, 2024 WL 4615736 (2d Cir. July 25, 2024); *Diabat v. Credit Suisse Group AG*, 2024 WL 4252502; *Lawtone-Bowles* v. *Thornburgh*, 1:23-cv-04813-CM (S.D.N.Y. June 7, 2023); *Schur* v. *Dougan*, 1:23-cv-10944-CM (S.D.N.Y. Dec. 18, 2023); *Hohimer Wealth Mgmt. LLC* v. *Dougan*, 1:23-cv-11138-CM (S.D.N.Y. Dec. 22, 2023); *Calhoun* v. *Credit Suisse Grp. AG*, 1:23-cv-06023-CM (S.D.N.Y. July 31, 2023); *Turner* v. *Credit Suisse Grp. AG*, 1:23-cv-05874-CM (S.D.N.Y. July 10, 2023); *Linhares* v. *Credit Suisse Grp. AG*, 1:23-cv-06039-CM (S.D.N.Y. July 13, 2023); *Core Cap. Partners, Ltd. v. Credit Suisse Grp. AG*, 1:23-cv-09287-CM (S.D.N.Y. Oct. 20, 2023); Mov. Br. at 1-3.  The Court notes that this list may not be the entirety of the Credit Suisse securities fraud cases relating to the 2023 merger, only that these are the cases specifically brought to the Court's attention via Credit Suisse and the Motion.  *See* Mov. Br. at 1-3.

arguments, the Court finds that this case should be transferred to SDNY. The reasons for this conclusion are explained below.

### A. Whether Venue is Proper in the Southern District of New York

In the first step of the § 1404(a) transfer analysis, this Court must determine whether Plaintiffs could have brought this case in Credit Suisse's proposed forum, SDNY. If not, the Court's inquiry ends as it may not transfer the case pursuant to § 1404(a).

In many cases, 28 U.S.C. § 1391 governs venue in United States District Courts. *See* § 1391(a)(1) ("Except as otherwise provided by law . . . this section shall govern the venue of all civil actions brought in district courts of the United States[.]"). However, "[t]he venue provision of primary importance in cases brought under the Securities Exchange Act, [] is not 28 U.S.C. § 1391(b), but rather 15 U.S.C. § 78aa." *CIBC World Mkts., Inc. v. Deutsche Bank Sec., Inc.*, 309 F. Supp. 2d 637, 644-45 (D.N.J. 2004) (internal footnote omitted). Under this particular provision, venue is proper in "(1) a district of which the defendant is an inhabitant, (2) a district in which the defendant is found, (3) a district in which the defendant transacts business, or (4) a district wherein any act or transaction constituting the alleged violation of the Securities Exchange Act occurred." *Id.* Only one of the four must be met for venue to be appropriate. 15 U.S.C. § 78aa(a).

The parties' main dispute centers around whether SDNY is a district in which Credit Suisse transacts business. Plaintiffs argue that Credit Suisse has previously sworn under oath that it has no "offices or employees in New York." Opp. Br. at 10.

Credit Suisse responds that its 2022 Annual Report plainly supports that it has operations in the United States through its New York branch and other U.S. subsidiaries, which is sufficient to establish venue as this Court found in *Karimi v. Deutsche Bank Aktiengesellschaft*, No. 20-8978, 2022 WL 1001566, at *4 (D.N.J. Mar. 31, 2022).  Reply Br. at 2-3.

The Court finds *Karimi* instructive.  There, this Court determined venue to be proper in New York after finding that a bank's supporting documents and Second Amended Complaint "point[ed] heavily" to its business activities in New York. *Karimi*, 2022 WL 1001566, at *4.  Specifically, those documents showed that: the bank traded on the New York Stock Exchange; that it engaged in "U.S. banking activities directly through [its] New York branch[;]" and that it listed its "agent in the United States" as having an address located in New York City.  *Id.*

Credit Suisse provides similar documentary support here that points directly to its business activities in New York.  *See, e.g.*, Mov. Br. Ex. 1, ECF No. 11-3.  In particular, Credit Suisse submits excerpts of its Form 20-F for the fiscal year of 2022, filed with the Securities and Exchange Commission ("SEC") on March 14, 2023 (the "Annual Report"),[3] which provides that: its "direct US offices are composed of our New York Branch and representative offices in California[;]" the "New York Branch is licensed by the New York Superintendent of Financial Services [], examined by the Department of Financial Services (DFS), and subject to laws and regulations

---

[3]  The Court notes that the entirety of the Annual Report (totaling approximately 612 pages) was supplied by Plaintiffs in an exhibit to its opposition brief.  Opp. Br. Ex. D, ECF No. 12-5.

applicable to a foreign bank operating a New York branch[;]" Defendant Credit Suisse Group AG's authorized representative in the U.S. is "Credit Suisse (USA), Inc." located at 11 Madison Avenue, New York, New York; and Credit Suisse Group AG and Credit Suisse AG's shares are listed on the New York Stock Exchange.[4]  *Id.*; *see* Opp. Br. Ex. D, ECF No. 12-5.  Therefore, like in *Karimi*, the Court finds that Plaintiffs could have filed this case in SDNY as Credit Suisse "transacts business" there under § 78aa.  As such, the Court may transfer this matter to SDNY pursuant to 28 U.S.C. § 1404(a) if the transfer would otherwise be appropriate.[5]

---

[4] Plaintiffs argue that having subsidiaries in New York is insufficient under § 78aa to establish that Credit Suisse transacts business in SDNY.  Opp. Br. at 11.  In support for this assertion, Plaintiffs cite two antitrust cases that analyze whether a plaintiff "transacts business" through the activities of its subsidiaries under the venue provision of a different federal statute, the Clayton Act, 15 U.S.C. §§ 12, 22.  Opp. Br. at 11-12 (citing *Diamond Chem. Co. v. Atofina Chemicals, Inc.*, 268 F. Supp. 2d 1, 10 (D.D.C. 2003), and *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 402 F. Supp. 262, 317 (E.D. Pa. 1975)).  The Court declines to extend other courts' analyses of the venue provision of the Clayton Act to an analysis of the venue provision of the Exchange Act at issue here, as it is unnecessary under the totality of the circumstances.  Credit Suisse's Annual Report speaks for itself and provides, at great length, financial details explaining clearly that Credit Suisse AG is Credit Suisse Group AG's direct subsidiary who shares the same authorized representative in the United States located in New York City.  *See* Opp. Br. Ex. D, ECF No. 12-5.

[5] Plaintiffs' argument that transfer is also improper because its NJ RICO claims might be dismissed pursuant to the Securities Litigation Uniform Standards Act ("SLUSA"), 15 U.S.C §§ 77p(b), (f)(2)(A), similarly lacks merit in the context of this Motion.  Opp. Br. at 13-14.  As aptly explained by the court in *Phoenix Ins. Co. Ltd. v. Teva Pharm. Indus. Ltd.*, 381 F. Supp. 3d 416, 422-23 (E.D. Pa. 2019) (emphasis added),

> Section 1404(a) authorizes transfer "if the plaintiff had an 'unqualified right' to bring the action in the transferee forum at the time of the commencement of the action." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3d Cir. 1970).  So long as the claim "might have been brought" in the transferee court, transfer is authorized.  28 U.S.C. § 1404(a).  Plaintiffs do not suggest that their Pennsylvania law claims could not have been brought in Connecticut.  Rather, Plaintiffs argue that the transferee court *may* dismiss Plaintiffs' Pennsylvania claims after determining that they are pre-empted by SLUSA.  *See* 15 U.S.C. § 78bb(f)(1), *et seq.* (barring pursuit of certain state law claims in actions covered by SLUSA). *Because SLUSA pre-emption occurs only after a post-filing decision by the transferee court, it is irrelevant to § 1404(a) analysis. See Hound Partners Offshore Fund, LP v. Valeant Pharm. Int'l, Inc.*, Civ. No. 18-76, 2018 WL 1940437, at *4 (S.D.N.Y. Apr. 24,

Having determined that SDNY is a proper venue for this case, the Court must next balance the private and public interest factors relevant to Credit Suisse's transfer application.  Credit Suisse retains the burden of establishing that transfer would be appropriate.  *See Santi*, 722 F. Supp. 2d at 606.  As set forth in detail below, a balance of the pertinent private and public interests and consideration of the interests of justice and efficiency, lead to the conclusion that transfer of this matter to SDNY is warranted.  The Court will address each of these factors in turn.

## B. Private Interest *Jumara* Factors

### 1. <u>Plaintiffs' Choice of Forum</u>

The first private interest factor is a plaintiff's choice of forum.  Generally, a plaintiff's choice of forum is a paramount consideration that should not be lightly disturbed.  *See Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970).  However, a plaintiff's forum selection is not dispositive, and courts commonly transfer cases when the convenience of the parties and interests of justice weigh in favor of the proposed transferee forum.  *See Am. Tel. & Tel. Co. v. MCI Commc'ns Corp.*, 736 F.

---

2018) ("Even if the state law claims will almost certainly be dismissed after this case is coordinated with the other New Jersey actions under SLUSA, at the time of commencement of this lawsuit, there would have been subject matter jurisdiction over all of the claims in the District of New Jersey if the lawsuit had originally been filed there.").

Accordingly, the Court finds that any potential threat of SLUSA pre-emption does not bar the transfer of Plaintiffs' case to SDNY, and this Court will not speculate as to the merit of any potential motion to dismiss that might be filed in the future.

Supp. 1294, 1306 (D.N.J. 1990) (collecting cases); *see also CIBC World Mkts.*, 309 F. Supp. 2d at 651 (same).

When a plaintiff chooses a foreign forum rather than its home forum or "when the central facts of a lawsuit occur outside the chosen forum, plaintiff's choice of forum is accorded less weight." *NCR Credit Corp. v. Ye Seekers Horizon, Inc.*, 17 F. Supp. 2d 317, 321 (D.N.J. 1998) (citations omitted); *see Van Cauwenberghe v. Biard*, 486 U.S. 517, 528 (1988) (noting that a court determines the origin of a claim by looking to the "locus of the alleged culpable conduct[.]"); *In re Consolidated Parlodel Litig.*, 22 F. Supp. 2d 320, 323-24 (D.N.J. 1998) (citations omitted) (a plaintiff's choice of forum decreases where "the central facts of a lawsuit occur outside the chosen forum."); *see also Ricoh Co., Ltd. v. Honeywell, Inc.*, 817 F. Supp. 473, 481-82 (D.N.J. 1993).

Here, the Court agrees with Credit Suisse and does not find Plaintiffs' choice of forum is entitled to significant deference.  Of note, none of the Plaintiffs are New Jersey companies, and only Plaintiff Appaloosa's principal place of business is located in New Jersey.  Compl. ¶¶ 30-32.  The fact that Plaintiffs Palomino and Azteca have investment advisors in New Jersey does not alter this Court's conclusion.  As will be discussed below *infra* Section (III)(B)(3), the crux of this matter involves the alleged misrepresentations made by Credit Suisse, all of which were transmitted globally and, at most, place SDNY and the District of New Jersey on the same footing.

New Jersey's relationship to the facts of this litigation is not unique or significant.  Thus, the Court finds that while Plaintiffs' choice to litigate this action

in New Jersey weighs against transfer, that weight is slight.  *See, e.g., NCR Credit Corp.*, 17 F. Supp. 2d at 321.

## 2. <u>Defendants' Choice of Forum</u>

Second, Credit Suisse prefers SDNY as the proper forum.  Mov. Br. at 12. Credit Suisse's preference is bolstered by several other cases that have been, or are currently, pending in SDNY and which involve the same defendants and overlapping facts as the present case.  Mov. Br. at 1-3.  The Court declines to take a narrow view of the facts as urged by Plaintiffs to encourage a finding of dissimilarity, as will be explained in further detail below.  This factor weighs in favor of transfer.

## 3. <u>Where the Causes of Action Arose</u>

As to the third factor, which "is the most critical to the Court's analysis[,]" the inquiry focuses on "which forum contains the center of gravity of the dispute, its events, and transactions."  *Metro. Life Ins. Co. v. Bank One, N.A.*, No. 03-1882, 2012 WL 4464026, at *6 (D.N.J. Sept. 25, 2012) (quoting *Park Inn Int'l, L.L.C. v. Mody Enters.*, 105 F. Supp. 2d 370, 377-78 (D.N.J. 2000)).  "When examining claims for misrepresentation on a motion to transfer venue, 'misrepresentations and omissions are deemed to occur in the district where they were transmitted or withheld, not where they are received.'"  *Id.* (quoting *Branthover v. Goldenson*, No. 10-cv-7677, 2011 WL 6179552, at *3 (S.D.N.Y. Dec. 12, 2011)); *see Karimi*, 2022 WL 1001566, at *5.

While Credit Suisse's alleged misrepresentations extended to New Jersey investors, (Compl. ¶¶ 105, 211-13), nothing in the record suggests that such conduct was specific to New Jersey, or even more prevalent within the District of New Jersey

than in other jurisdictions such as SDNY.  To the contrary, Plaintiffs' allegations support that Credit Suisse globally broadcasted this fraudulent conduct.  *See* Compl. ¶¶ 167-72, 175-80.    Still, although Credit Suisse's alleged material misrepresentations and false statements were disseminated nationwide, Plaintiffs' Complaint alleges that the claims arose in New Jersey as the AT1 Notes were bought by Plaintiffs' traders at Appaloosa's office in New Jersey, causing Plaintiffs' damages. Compl. ¶¶ 28, 252-56.  However, the specific location where Plaintiffs bought the AT1 Notes is not a dispositive fact in this matter, especially as Plaintiffs' traders made the purchases through their broker, Goldman Sachs.  *Id.* ¶ 103.  New Jersey has no greater connection to this matter than New York.  Thus, the Court finds the third factor is neutral.

### 4. <u>The Relative Convenience of the Parties</u>

With respect to the fourth factor, "the convenience of the parties as indicated by their relative physical and financial condition," *Jumara*, 55 F.3d at 879, Plaintiffs contend New Jersey would be more convenient because Plaintiff Appaloosa and its counsel have offices in New Jersey.  Opp. Br. at 17-18.  Conversely, Credit Suisse argues it would be significantly more convenient to litigate this matter in SDNY due to the other similar cases that are already pending there that involve the same witnesses.  Mov. Br. at 12.

It is important to keep the arguments about this factor in perspective.  No one can dispute that the distance between SDNY and this District is less than 15 miles. Neither Credit Suisse nor Plaintiffs—both sophisticated parties—have provided

evidence or affidavits that traveling the short distance between New York and New Jersey would cause undue financial or physical burden for any party, only minor inconvenience. It would strain credulity to even argue inconvenience based on such a short distance. Thus, the Court finds the fourth factor is neutral.

### 5. <u>The Convenience of the Witnesses and the Availability of Documents</u>

The fifth factor provides that the convenience of the witnesses must also be considered, but "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879. Nothing in the record persuades the Court that any of the relevant witnesses would be unavailable considering the short distance between the two districts, as previously noted. The Court finds that this factor is neutral to the transfer analysis.

Finally, the Court must also consider "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Id.* (citation omitted). "The technological advances of recent years have significantly reduced the weight of this factor in the balance of convenience analysis." *Lomanno v. Black*, 285 F. Supp. 2d 637, 647 (E.D. Pa. 2003) (citation omitted). Similar to the previous factor, the Court is unpersuaded by the parties' arguments that either district is favorable considering the quantum of the evidence will likely be produced electronically. This factor is also neutral.

### C. Public Interest *Jumara* Factors

The Court turns next to the public interest factors set forth by the Third Circuit in *Jumara*.

## 1. __Enforceability of Judgments__

The "enforceability of the judgment" factor is neutral, as a judgment rendered in either this District or SDNY could easily be registered and then enforced in another district.

## 2. __Practical Considerations Regarding Trial__

As to the second public interest factor, Credit Suisse argues that SDNY's substantial experience handling related litigation strongly favors transfer. Mov. Br. at 6-7; Reply Br. at 6-8. The Court agrees. Practical considerations are relevant in that they "could make the trial easy, expeditious, or inexpensive," and this is particularly true if transferring the case would result in it being in "another jurisdiction where a related matter is pending." *LG Elecs., Inc. v. First Int'l Computer, Inc.*, 138 F. Supp. 2d 574, 592 (D.N.J. 2001) (collecting cases). "It is well-established that a pending related case in another district can be a compelling reason to transfer venue." *Vanda Pharms., Inc. v. Teva Pharms., Inc.*, 2023 WL 8890322, at *7 (D.N.J. Dec. 26, 2023) (citations omitted). In these situations, transfer is favored as "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that 1404(a) was designed to prevent." *Am. Tel. & Tel. Co.*, 736 F. Supp. at 1308 (alteration in original) (quoting *Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960)). Critically, "the legal claims and issues between cases do not have to be identical for this factor to favor transfer; rather the existence of a similar case supports transfer where the cases are similar enough that transfer would support

16

judicial efficiency or reduce the risk of inconsistent results." *Hytera Commc'ns Corp. Ltd. v. Motorola Sols., Inc.*, No. 17-12445, 2018 WL 7108018, at *10 (D.N.J. Dec. 6, 2018) (citing *Job Haines Home for the Aged v. Young*, 936 F. Supp. 223, 233 (D.N.J. 1996)).

Credit Suisse argues that this factor "is the most important consideration" favoring transfer because the present action is closely related to and shares similar factual and legal issues with those pending before Judge McMahon in SDNY. Mov. Br. at 6-8. In particular, Credit Suisse argues that this case overlaps most notably with the cases consolidated in *Diabat*, 2024 WL 4252502, and *Core Capital*, 1:23-cv-09287-CM (S.D.N.Y. Oct. 20, 2023), which are both being overseen by Judge McMahon, and therefore a denial of the Motion may risk inconsistent outcomes or findings. Mov. Br. at 7-8; Reply Br. at 7. Plaintiffs argue in opposition that this action is dissimilar to those before SDNY as the instant case is narrower, pleads different theories of fraud, and includes a much more limited timeline than the cases pending before Judge McMahon. Opp. Br. at 19-21. The Court is not convinced by Plaintiffs' arguments.

Here, it is evident from Judge McMahon's thorough September 19, 2024 Opinion in *Diabat* that SDNY has already expended significant time, effort, and resources in becoming familiarized with these cases' highly complex factual background involving Credit Suisse's merger with UBS. *See Diabat*, 2024 WL 4252502. Indeed, Judge McMahon's comprehensive 303-page opinion in *Diabat* is

only one case of many others involving the same general subset of facts and securities fraud claims pending before her.  *Id.*; ECF No. 14-1.

Plaintiffs' arguments that this action involves a different type of securities and a narrower time period than *Diabat* miss the mark.  There is no requirement that the facts and legal theories must be exactly the same as Plaintiffs contend—only that they be "similar enough."  *See Hytera Commc'ns*, 2018 WL 7108018, at *10.  Both cases arise out of the same nucleus of operative facts—allegations that Credit Suisse misrepresented its financial health when it sold securities, whether it was AT1 Notes or any other class of security.[6]  And the time period that is allegedly at issue here, March 13 to March 20, 2023 (Opp. Br. at 1), is generally subsumed in the *Diabat* matter.[7]  Furthermore, the fact that some of the overlapping claims may have been dismissed pursuant to Judge McMahon's decision in *Diabat* does not change the analysis here as the cases are certainly still "similar enough" to support transfer.  *See Eagle View Techs., Inc. v. GAF Materials, LLC*, 594 F. Supp. 3d 613, 624 (D.N.J. 2022) ("Practical considerations may weigh in favor of transfer when there is a similar enough case pending in the transferee venue.").

---

[6] Plaintiffs argue that there is no overlap with *Diabat* due to the differences in the type of securities at issue; however, Plaintiffs fail to account for the facts of another pending matter in SDNY, *Core Capital*, 1:23-cv-09287-CM (S.D.N.Y. Oct. 20, 2023), brought by other purchasers of Credit Suisse's AT1 Notes in the United States between February 21, 2021 and March 20, 2023.  *See* ECF No. 16 at 3.

[7] The Court disagrees with Plaintiffs' attempts to narrow the relevant timeline at issue in this matter, as explained within their chart at ECF No. 14 at 3.  The timeline of the allegations as pled within the Complaint clearly includes, at a minimum, the additional background of the failure of SVB on March 10, 2023, and its effect on the subsequent failure of Credit Suisse.  *See* Compl. ¶¶ 1-7, 58-85.  That background is crucial to this action and those pending before Judge McMahon, who has set out those facts in excruciatingly precise detail on multiple occasions as demonstrated by her various opinions in these Credit Suisse matters, including, but not limited to, *Diabat*.  2024 WL 4252502, at *1-6; *see Stevenson*, 2024 WL 645187, at *1-7; *see also Star Colbert*, 724 F. Supp. 3d at 311-17.

Indeed, the fact that Plaintiffs may have crafted their legal claims differently than those in *Diabat* does not alter this Court's conclusion.  ECF No. 14 at 2-3.  Judge McMahon's decision in *Diabat* only further demonstrates that she is well-versed with these types of issues and legal theories involving securities fraud brought specifically against Credit Suisse for its alleged misrepresentations and misstatements.  If this Court were to accept Plaintiffs' arguments, it would be forced to ignore and reject the immense time and effort Judge McMahon has already expended to become painstakingly familiar with Credit Suisse and its financial downfall in March 2023, causing significant duplicative judicial efforts and risking the potential for inconsistent findings.  *Prudential Ins. Co. of Am. v. Rodano*, 493 F. Supp. 954, 955 (E.D. Pa. 1980) ("The interests of justice and the convenience of the parties and witnesses are ill-served when federal cases arising out of the same circumstances and dealing with the same issues are allowed to proceed separately.").

Thus, considering the substantial overlap of the legal and factual nature of these cases, the high risk of inconsistent rulings, and the undoubtedly enormous amount of judicial effort already expended, coupled with the fact that this matter is in its early stages, the practical considerations here strongly tilt in favor of transferring this action to SDNY.  *See Eagle View Techs.*, 594 F. Supp. 3d at 625.

### 3. <u>Relative Administrative Difficulty</u>

With respect to "the relative administrative difficulty in the two fora resulting from court congestion," *Jumara*, 55 F.3d at 879-80, the Court finds this factor is neutral.  Both district courts have been historically congested with a heavy caseload.

Even if this District were presently less congested than SDNY—a factor which has not been proven—that alone would not change the Court's decision. In fact, this factor has minimal importance in the overall transfer inquiry. *See Yocham v. Novartis Pharm. Corp.*, 565 F. Supp. 2d 554, 560 (D.N.J. 2008); *see also Grant Indus., Inc. v. Isaacman*, No. 21-cv-13094, 2022 WL 2358422, at *13 (D.N.J. June 30, 2022). This factor is therefore neutral.

### 4. <u>Local Interests / Public Policies of the Fora</u>

Next, "[t]he public interest factor of the local interest in deciding local issues is intertwined with the private interest factor of where the claim arose." *LG Elecs.*, 138 F. Supp. 2d at 592. "The location where the claim arose is also a public interest factor because local judges and juries are preferred arbiters of events in their jurisdiction and community." *Id.* (citation omitted). As neither district has a significant local interest in this matter, the fourth factor is neutral.

### 5. <u>Judges' Familiarity with Applicable State Law</u>

As Courts in this District have frequently noted, "federal district courts are regularly called upon to interpret the laws of jurisdictions outside of the states in which they sit." *Yocham*, 565 F. Supp. 2d at 560. As such, the federal courts in both this District and SDNY are equally familiar with the legal principles underlying the state law claims and federal claims necessary to resolve this case. Both districts are equally equipped to interpret and apply New Jersey's RICO statute. This is especially true as New Jersey courts have repeatedly acknowledged that, "because our New Jersey RICO statute is modeled upon its federal counterpart, it is appropriate to

accept[] guidance from the federal RICO cases." *State v. Cagno*, 49 A.3d 388, 399-400 (N.J. Sup. Ct. 2012) (internal quotation marks omitted); *see also State v. Ball*, 661 A.2d 251, 258 (N.J. Sup. Ct. 1995) (noting that "because the federal [RICO] statute served as an initial model for our own, we heed federal legislative history and case law in construing our [NJ RICO] statute."). Therefore, this factor does not weigh decidedly in either party's favor and is neutral.

### D. The *Jumara* Factors Weigh in Favor of Transfer

Finally, the Court has carefully considered each of the factors discussed above. Most of those factors are neutral to the transfer analysis. However, public interest factor two strongly favors transfer, and only a single private interest factor weighs slightly against it. Therefore, on balance, the Court finds that the *Jumara* factors weigh in favor of transferring this matter to SDNY.

### IV.    CONCLUSION

For the reasons set forth above, Credit Suisse's Motion is **GRANTED** (ECF No. 11); therefore, this matter is hereby **TRANSFERRED** to SDNY. The parties have fourteen days to appeal this Opinion and Order. *See* L.Civ.R. 72.1(c)(1)(A).


HON. JOSÉ R. ALMONTE
UNITED STATES MAGISTRATE JUDGE

Dated: January 31, 2025

Orig:  Clerk of the Court
cc:    Counsel of Record
       The Honorable Julien X. Neals, U.S.D.J.